SAMUEL HECHLER, Suing on Behalf of Himself and All Others Similarly Situated as Holders of Class B Non-Voting Stock of the Defendant UNITED INVESTORS SECURITIES CORPORATION, etc., Plaintiff, *v.* ARCHIBALD C. EMERY and Others, Defendants.

Supreme Court, New York County, February 9, 1928.

Corporations — receivers — application in stockholder's representative action for appointment of receiver — contract for selling stock was illegal — receiver appointed.

This is an application in a stockholder's representative action for the appointment of a receiver of a corporation. One of the individual defendants entered into a contract with the corporation on its organization which granted him power to sell non-voting stock on commission and the sole right to purchase 5,000 shares of its voting stock and a five-year option to take the remaining shares at ten dollars per share. The stock was to be purchased out of commissions. The contract gave said defendant absolute control of the corporation without the investment of any money outside of commissions.

The contract is illegal and unless said defendant is restrained pending the determination of the action he may distribute the stock among dummies of his own choice and still retain actual control. A receiver is appointed.

MOTION by the plaintiff for the appointment of a receiver.

*Katz & Levy* [*Joseph A. Shay* of counsel], for the plaintiff.

*Winthrop, Stimson, Putnam & Roberts* [*Isidor J. Kresel, Bernard Hershkopf* and *Allen T. Klots* of counsel], for the defendants.

LEVY, J. Whatever view may be taken as to the propriety, the reasonableness and the interpretation of the contracts by which defendant Emery obtained a ten per cent commission on all sales

of Class B non-voting stock of the corporation, which sales approximate $2,000,000, that phase which relates to class A voting stock is of a highly questionable character. Here we have a contract entered into by the corporation when it was practically in its embryo state, whereby Emery was granted the power to sell its non-voting stock on commission, and the sole right to purchase 5,000 shares of its voting stock, with the five-year option to take up the 15,000 remaining shares of such stock at ten dollars a share. This stock was to be purchased out of the commissions to be earned by him. The 5,000 shares have been thus acquired by him with the result that he is in absolute control of the corporation, with full power of disposition over its assets. And all this he took unto himself without the investment of any money whatever, except such as he received by reason of his connections with the corporation.

The situation presented here is an extreme case of abuse in corporate organization, the subject of much current comment by economists, whereby a small group of voting stockholders are generally given control over the destinies of a corporate entity, most of whose stock is of non-voting character. A sweeping but just criticism of such an undemocratic method of corporate organization is contained in Professor Ripley's book: " Main Street and Wall Street." In the chapter significantly entitled "A Birthright for Pottage " (at p. 86) he thus arraigns promoters in a recent organization who assumed sole control of a corporation by retaining all the voting stock: " The promoters have virtually paid themselves a handsome profit for the assumption of the entire directorial power, having mortgaged the property to the full amount of its original cost through outstanding bonds and preferred stock, including both assets and capitalized earning power. And the amazing thing is that this final death-blow to the exercise of voting rights by the general public has brought no voice of protest. Yet the plan bears every appearance of a bald and outrageous theft of the last tittle of responsibility for management of the actual owners by those who are setting up these latest financial erections. Isn't it the prettiest case ever known of having a cake and eating it too? "

Here, the circumstances disclose a more flagrant situation, because the entire voting control is centered in the hands of one man. Unless his absolute and unlimited power be restrained pending the determination of the action, it may well be, as it is argued, that he will distribute the stock among dummies of his own choosing, while actually remaining in sole control.

The motion for the appointment of a receiver is, therefore, granted. Submit order.